IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KIMBERLY F. MILLS, Individually and As Independent Executrix of the Estate of ARTHUR MARK MILLS, and on behalf of the Beneficiaries to the Estate to include JEREMY M. MILLS, LEVI C. MILLS AND APRIL C. WEBB, Each Individually and as WRONGFUL DEATH BENEFICIARIES OF ARTHUR MARK MILLS, DECEASED<br>   *Plaintiffs*,<br><br>vs.<br><br>UNITED AIRLINES, INC., ABM AVIATION, INC., SIMPLICITY GROUND SERVICES, LLC D/B/A SIMPLICITY USA, ANTONIO DELEON, JESSICA MORA, PRYSTAL MILTON, AND EXPRESSJET AIRLINES, INC.,<br>   *Defendants*. | § § § § § § § § § § § § § § § § § § § § § § | C.A. 4:21-cv-1241 |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO REMAND

Defendants ABM Aviation, Inc., Jessica Mora, Prystal Milton, Antonio DeLeon, United Airlines, Inc., Simplicity Ground Services, LLC d/b/a Simplicity USA, and ExpressJet Airlines, Inc. (collectively "Defendants") file this Response to Plaintiffs' Motion to Remand, and respectfully show this Honorable Court as follows:

## NATURE OF ACTION

This is a personal injury action in which Plaintiffs seek recovery for alleged bodily injuries purportedly sustained on or about February 7, 2019, by Mr. Arthur Mark Mills a passenger in a wheelchair who, two-months prior had been involved in a one-vehicle accident that left him a

DEFENDANTS' RESPONSE TO PLAINTIFFS MOTION TO REMAND

1

paraplegic, while emplaning an aircraft at George Bush Intercontinental Airport ("IAH") in Houston, Texas, and deplaning an aircraft at Lubbock Preston Smith International Airport ("LBB") in Lubbock, Texas. Plaintiffs' right to relief arises under federal law. Plaintiffs' claims all fall within the complete preemptive scope of the Airline Deregulation Act (the "ADA"). The ADA enacted by Congress in 1978, prohibits states from enacting or enforcing a law, regulation or other provision that relates to a "price, route or service of an air carrier." 49 U.S.C. §41713(b)(1) (1978). The Fifth Circuit has adopted a more expansive interpretation of airlines services under the ADA to include "ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to transportation itself." *See Hodges v. Delta Airlines, Inc*. 44 F.3d 334, 336 (5th Cir. 1995). This claim is removable under 28 U.S.C.S. § 1441(b), which authorizes any claim that "arises under" federal law to be removed to federal court.

## AUTHORITY AND ARGUMENT

Plaintiffs argue that this Court lacks subject-matter jurisdiction because 1) removal was untimely and 2) that the claims alleged cannot be preempted by the Airline Deregulation Act of 1978, nor the Air Carrier Access Act (the "ACAA"), because neither expressly provide a private right to sue the air carrier.

Plaintiffs' interpretation completely fails to understand the "pervasive regulatory scheme" that systematically governs an airline's accommodation of disabled passengers from reservations through enplaning and deplaning in extensive detail which was "designed to vindicate fully the rights of disabled persons." *See Stokes v. Southwest Airlines*, 887 F.3d 199, 202 (5th Cir. 2018) citing *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2nd Cir. 2011). This comprehensive federal scheme is unequivocally the only framework for Plaintiffs to exercise their rights against Defendants and is squarely within the realm of this Court's jurisdiction.

A. **REMOVAL WAS TIMELY**

Defendants' removal was timely despite Plaintiffs' argument to the contrary. The Notice of Removal was made within 30-days of receipt of information "through service or otherwise." 28 U.S.C. § 1446(b)(3). Plaintiffs intentionally drafted their Original and First Amended Petition to obscure their claims arising from federal disability law as applied to air travel.

Plaintiffs' argument that Defendants' Notice of Removal was filed late fails because Plaintiffs artfully plead their allegations contained in the Original Petition, as well as the Amended Petition, to intentionally avoid any allegations that would give rise to federal question grounds. While it is well settled that that a Plaintiff is the "master of his complaint and may generally allege only a state law cause of action even when federal remedy is also available." *Bernhard v. Whitney Nat. Bank,* 523 F.3d 546, 551 (5th Cir.2008), the Plaintiffs cannot have it both ways.

The consequence of Plaintiffs' strategy to vaguely plead allegations of a federal nature as part of the "facts and background" of the pleadings but not as part of the causes of action is their strategic choice, but consequently Plaintiffs' pleadings "did not establish federal question jurisdiction under the well -pleaded complaint rule sufficient to trigger 30-day period for removal." *Quinn v. Guerrero*, 863 F.3d 353 (5th Cir.) (2017) see also, *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint (citations omitted) The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.")

In *Quinn*, Plaintiff pleadings listed only state law claims and intentionally skirting around federal claims while making "vague references to excessive force and United State Constitution."

*Quinn v. Guerrero*, 863 F.3d at 359. Despite mentioning "excessive force" 17 times in the Original Petition, Plaintiffs never listed excessive force as a specific cause of action. It was not until their Amended Petition when claims arising under federal law were asserted that a ground for removal was presented and the 30-day deadline began to run. *Ibid.*

Here, Plaintiffs' Original Petition asserts three causes of action: (1) wrongful death; (2) survival claims; and (3) negligence/gross negligence. Throughout the Original Petition, Plaintiffs made repeated vague references to industry governance, regulation and statutory requirements by clearly citing a Federal Aviation Administration ("FAA") statistic that "more than 44,000 flights and 2.7 million passengers across more than 29 million square files of airspace. These passengers are required to abide by strict guidelines and restrictions throughout the entire flight experience. Airline passengers follow these policies and procedures implemented by airlines [actually the FAA creates the rules airlines and passengers abide by] because they trust and believe doing so will result in safer and more enjoyable flight experience." Plts. First Amend. Pet. ¶¶ 13-17.

More specifically, Plaintiffs makes direct references to federal regulations and statutes in the same pleading. Specifically, Plaintiffs allege that "[a]irlines must accommodate the needs of air travelers with disabilities" with came with a footnote link to a U.S. Department of Transportation webpage describing the requirements for an airline under the Air Carrier Access Act or "ACAA". Footnote 2, Paragraph 15, pg. 5, Original Petition.

Plaintiffs also allege that "[a]irlines are required to provide passengers with disabilities many types of assistance, including a wheelchair or other guided assistance to board, deplane, or connect to another flight; seating accommodation assistance that meets passengers' disability-related needs; and assistance with the loading and stowing of assistive devices. Footnote 3, Paragraph 15, pg. 5, Original Petition.

The Amended Petition continued the same strategy with even more emphasis but still never presented a clear federal question issue with which to trigger the 30-day deadline. As alleged in the Amended Petition, the Defendants were negligent by:

◆ failing to follow industry standards and best practices for transporting a passenger with disabilities and special needs (Plaintiffs' Amended Petition, Para.31, p.6., Para 35, p.7)

◆. . .hiring, supervising, training and retaining Defendants … as transporters of passengers with disabilities and special needs. (*Ibid.*, Para.39 and 40, p.8.)

◆ (failing to) provide properly trained transporters personnel (sic) to help (Plaintiff) who is disabled, board and exit the plane . . . to make available all appropriate safety measures and devices while boarding and deboarding the plane . . . violat[ing] industry-standard safety rules… (*Ibid.*, Para.43, p.9.)

As in *Quinn*, Plaintiffs strategically chose not to include any claims that would give rise to federal question issues, but in so doing also did not start the 30-day removal clock. It should be noted that Defendants were also at a disadvantage and in a wait-and-see position regarding removal since Defendants "may not remove a case to federal court on the basis of a federal claim that the plaintiff *could have asserted* or on the basis of a federal defense that the defendant might assert" *City of Sachse, Texas v. Kansas City Southern,* 564 F.Supp.2d 649, 653, n1 (E.D.Tex.2008) (*emphasis added*).

Tellingly, Plaintiffs Motion to Remand does not deny the existence or application of the federal question issues. Instead, it seeks to capitalize on their artful pleading, even comparing, through a chart, the verbatim repetition of the indirect misleading allegations. While their pleadings track exactly the same, verbatim, that analysis is a false choice. The real analysis is the purpose of the language quoted, specifically, to what operative legal document was that language responding. The purposes and meaning of the two different documents are very different. While Plaintiffs can control the Petition and Amended Petition as he or she sees fit, the Request for Disclosure is broader on its face. The RFD demands:

(c) The legal theories and, in general, the factual bases of the responding party's claims or defenses (the responding party need not marshal all evidence that may be offered at trial)

p. 4-9, Plaintiffs' First Amended Responses to All Defendant's Requests for Disclosure, filed May 14, 2021

Here, Plaintiffs continue to be vague and expansive and to hide the federal question issues in and among his state law claims. In fact, Plaintiffs repeat, verbatim, their entire Petition, and do not discern, or parse the specific state law legal theories alleged but rather, presented the entire unabridged Petition to the Defendants for them to figure out. This is not by accident. However, now, Defendants had the grounds to remove, at last, since these allegations were the legal theories to be used at trial.

The Original Petition and First Amended Petition allow for such vagueness and Defendants were not in a position to remove until the Responses to Request for Disclosure were served. It is well-settled that Responses to Requests for Disclosure form the basis for removal. *Strong v. Green Tree Servicing, LLC*, 716 Fed. Appx. 259 (5th) (2017). (The court held that the RFD response established federal question and transformed the matter from state to federal jurisdiction related to the amount in controversy.)

Plaintiffs' strategy to hide the federal question in this matter through vague, artfully plead Petitions, cannot succeed. In fact, the artful pleading doctrine, which is an "independent corollary" to the well-pleaded complaint rule. *Bernhard v. Whitney Nat'l Bank*, 523 F.3d at 551, citing to *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475. 118 S. Ct. 921, 139 L. Ed. 2d 912 (1998). Under this principle, even though the plaintiff has artfully avoided any suggestion of a federal issue, removal is not defeated by the plaintiff's pleading skills in hiding the federal question. See *id*. There is no doubt but that "[t]he artful pleading doctrine allows removal where federal law


DEFENDANTS' RESPONSE TO PLAINTIFFS MOTION TO REMAND

6

completely preempts a plaintiff's state-law claim." *Id*. In fact, the artful pleading doctrine applies only where state law is subject to complete preemption. *Terrebonne Homecare, Inc. v. SMA Health Plan, Inc.*, 271 F.3d 186, 188-89 (5th Cir. 2001). Federal question jurisdiction therefore exists where, because state law is completely preempted, "there is, in short, no such thing as a state-law claim." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 11, 123 S. Ct. 2058, 156 L. Ed. 2d. 1 (2003). Such a result would lead to common "end runs" of a similar type. Ironically, Plaintiffs cite to *Beneficial Nat'l Bank* for the proposition that under the well-pleaded complaint rule, a "defense that relies on…the pre-emptive effect of a federal statute will not provide a basis for removal, *Id*. at 6, but fail to acknowledge the import of the case; that being where complete preemption exists, removal is proper despite a plaintiff's artful pleading to the contrary.

Moreover, Plaintiffs caselaw is inapposite or distinguishable because the three cited cases[1] related to the timing of removal, *New York Life Insurance v. Deshotel, Decatur Hospital Authority v. Aetna and Meisel v. USA Shade and Fabric* deal with commercial disputes, not personal injury cases and do not involve an airline or even the aviation industry. In addition, the Plaintiff in each of those cases had specifically alleged a claim arising from a federal question in an earlier pleading, as opposed to here where Plaintiffs have buried indirect references to disability law in the airline industry in its facts and background of earlier pleadings but never asserted it as a direct cause of action. Moreover, Plaintiffs' interpretations of the cited caselaw and page citations are overstated and self-serving.

**B.    THE AVIATION DEREGULATION ACT ("ADA") 1978, 49 U.S.C. § 41713(B)(1) PROVIDES FOR COMPLETE PREEMPTION**

Plaintiffs' sophisticated legal counsel have a reputation for suing national automobile

---

[1] *New York Life Insurance v. Deshotel*, 142 F.3d 873, 886 (5th Circuit 1998); *Decatur Hospital Authority v. Aetna* 854 F.3d 292, 297 (5th Cir 2017); and *Meisel v. USA Shade and Fabric*, 795 F.Supp.2d 481, 493 (N.D. Tex 2011).

manufacturers for product defects are keenly aware that under the well-pleaded complaint rule, determining whether a claim arises under federal law allows a plaintiff to be the "master to decide what law he will rely upon" in pursuing his claims. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987). Knowing that where potential remedies exist under both state and federal law, a plaintiff may choose to proceed only under state law and avoid federal court jurisdiction. *Id.*; *Carpenter v. Wichita Falls Independent School District*, 44 F.3d 362, 366 (5th Cir. 1995). Accordingly, Plaintiffs intentionally drafted a complaint that, on its face was devoid of language that would subject it to federal jurisdiction.

"There is an exception to the well-pleaded complaint rule, though, if Congress 'so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Arana v. Ochsner Health Plan*, 338 F.3d 433, 437 (5th Cir. 2003). Or, when a federal statute completely preempts the state-law cause of action, a claim which comes within the scope of that claim of action, even if pleaded in terms of state law, is in reality based on federal law. Such a claim is then removable under 28 U.S.C. § 1441(b), which authorizes any claim that "arises under" federal law to be removed to federal court. *Beneficial National Bank v. Anderson*, 539 U.S. 1, 8, 123 S. Ct. 2058, 156 L. Ed. 2d 1 (2003).[2] This narrow exception – the artful pleading doctrine – permits the court to look beyond the face of the plaintiff's complaint to determine if federal law "so forcibly and completely displace[s] state law that the plaintiff's cause of action is either wholly federal or nothing at all." *Carpenter, 44 F.3d at 366-67*. Complete preemption exists in this particular case for the reasons espoused below.

---

[2] Plaintiffs' argument is disingenuous. They fail to provide the Court with the second instance in which complete pre-emption may exist, i.e., when a state-law action is displaced by federal statute as is the case in this instance. Also, Plaintiffs make an absurd assertion that the "U.S. Supreme Court has only ever found 3 acts to be completely preemptive." Plts. Motion to Remand, ¶ 20. This statement excludes portions of federal statutes that provide for preemption.

### C.    COMPLETE PREEMPTION CREATES FEDERAL REMOVAL JURISDICTION

To answer whether a claim is preempted by the ADA, a determination must be made as to whether the claim is "related to" an airline's prices or services within the meaning of the ADA's preemption provision, 49 U.S.C. § 41713(b)(1). It is well-established that the ADA prohibits and declares that no state may "enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." *Id.* The Fifth Circuit has adopted a more expansive interpretation of airlines services under the ADA to include "ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to transportation itself." *Hodges v. Delta Airlines, Inc*. 44 F.3d 334, 336 (5th Cir. 1995). The claims that Plaintiffs assert deal with the airline's handling of Mr. Mill's a disabled passenger during the boarding process, which this Circuit recognizes as "relating to" an airline's services as contemplated by the ADA. Having established that boarding services are those that fall within the purview of the ADA preemption clause, the next step of the preemption analysis requires Defendants to show that: (1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and (3) there is clear Congressional intent that the federal action be exclusive. *Gutierrez v. Flores*, 543 F.3d 248, 252 (5th Cir. 2008). All three prongs of the preemption test are easily met in this particular case; Plaintiffs' assertion that without a federal private cause of action preemption fails, has no merit and is a complete misunderstanding of the law.

### i.    FEDERAL AVIATION STATUTES PROTECT PLAINTIFFS' ABILITY TO ASSERT A RIGHT OF ACTION AGAINST DEFENDANTS

Congress has impliedly preempted the field of governmental regulation pertaining to the health and safety of air carrier passengers during flight by enacting the Federal Aviation Act of

1958, Pub. L. No. 85-726, 72 Stat. 731 (codified as amended at 49 U.S.C. §§ 40101, *et seq.*,) (the "FAA"), and giving the Federal Aviation Administration comprehensive power to issue Federal Aviation Regulations thereunder. Moreover, the Air Carrier Access Act ("ACAA"), 49 U.S.C.A. § 41705, establishes the requisite duty of care owed to disabled passengers, prohibits air carriers, like United Airlines, Inc. and ExpressJet Airlines, LLC, from discriminating against individuals, such as Mr. Mills with physical disabilities. The ACAA, taken together with the regulations that implement the ACAA's prohibition on discrimination, 14 C.F.R. Part 382 (collectively, the "ACAA Regulations"), constitute a "pervasive regulatory scheme" that comprehensively governs an airline's accommodation of disabled passengers from reservations through deplaning in extensive detail and therefore imposed certain obligations upon United Airlines, Inc. and ExpressJet Airlines, LLC with regard to its treatment of Mr. Mills. Though ACAA "does not expressly provide a right to sue the air carrier," or as Plaintiffs' prefer to state, "no private right of action," these statutes taken collectively instruct that ACAA enforcement lies primarily with the Department of Transportation ("DOT"), leaving private litigants only carefully circumscribed roles. Thus, rather than suing airlines directly, aggrieved passengers are to notify the DOT, 49 U.S.C. § 46101(1), which "shall investigate each [ACAA] complaint." Id. § 41705(c)(1).[3] This specific provision provides the civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law, satisfying the first requisite to proving that complete preemption exists.

---

[3] In addition, under DOT regulations, domestic airlines using planes with 19 or more passengers' seats must retain one or more "Complaints Resolution Officials" ["CRO"] at each airport they serve, who must take steps to resolve ACAA complaints. See 14 C.F.R. §§ 382.151, 382.153. Plaintiffs utilized a CRO at Bush Intercontinental Airport in Houston when they told ABM wheelchair agents that they did not want them to lift Mr. Mills from the aisle chair to his seat as trained. The CRO intervened and offered Plaintiffs' an alternative to using ABM services.

DEFENDANTS' RESPONSE TO PLAINTIFFS MOTION TO REMAND

10

### ii. DOT MAY ENFORCE ORDERS ARISING FROM AN ACAA VIOLATION

The second prong of the analysis in determining whether or not complete preemption exists requires that there be a specific jurisdictional grant to the federal courts for enforcement of the right violated. Under 49 U.S.C. § 46106, the DOT may enforce orders arising from an investigation of an ACAA violation by filing its own civil action in district court or by requesting that the Department of Justice do the same, *id. § 46107(b)(1)(A); See Stokes v. Southwest Airlines,* 887 F.3d 199, 203 (5th Cir. 2018). This is in addition to the DOT issuing an order compelling compliance with ACAA, and may further revoke an airline's air carrier certificate, *id. § 46101(a)(4) or* impose civil penalties of up to $25,000 for each act of discrimination, *id. §§ 41705(b), 46301(a)(1)(A) & (c)(1)(A).* In short, the ADA by allowing the Secretary of Transportation to file a civil action in federal court to enforce a disabled passengers right, the second prong of the complete preemption analysis is satisfied.

### iii. CONGRESS INTENDED FOR FEDERAL ACTION TO BE EXCLUSIVE

The third prong requires clear Congressional intent that federal action be exclusive. The ADA enacted by Congress in 1978, prohibits and declares that no state may "enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. §41713(b)(1). Congress was clear in its enactment of the ADA that passenger enplaning and deplaning are completely under the domain of federal action. To this end, the U.S. Supreme Court has held that "The ADA's preemptive clause, § 1305(a)(1), read together with the FAA's saving clause, stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated." *Am. Airlines v. Wolens*, 513 U.S. 219, 233, 115 S. Ct. 817, 130 L. Ed. 2d 715 (1995). The practices and

procedures that Plaintiffs alleged were violated by airline personnel in handling Mr. Mills, are obligations imposed upon the airline by federal statute and not undertaken voluntarily by the airline itself.

D. **THE AIRLINE DEREGULATORY ACT WHOLLY DISPLACES THE STATE-LAW CAUSE OF ACTION THROUGH PREEMPTION**

Here, because the basis for the Plaintiffs' claims that United Airlines, Inc. and/or ExpressJet Airlines, LLC failed to properly enplane and deplane, the claims are routed in the Defendants' adherence to the ACAA's requirements. Plaintiffs' allegations grounded in a "failure to provide medical care" are related to United Airlines, Inc. and/or Express Jet Airlines, LLC prices, routes are services – specifically, in this case, providing medical accommodations to a paraplegic passenger. *Boon Ins. Agency, Inc. v. Am. Airlines, Inc.,* 17 S.W.3d 52, 56 (Tex. App. 2000, pet. denied) ("The 'related to' language was intended to be broad in order to express an expansive preemptive purpose."). Significantly, the liability of United Airlines, Inc. and/or Express Jet Airlines, LLC in relation to this service, if any, is governed by principals of federal law, not Texas state law. *See American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995) (Airline Deregulation Act's preemption clause stops states from imposing their own substantive standards with respect to rates, routes, and services). As stated *infra. B.,* when a federal statute completely preempts the state-law cause of action as the ADA does, a claim which comes within the scope of that claim of action, even if pleaded in terms of state law, is in reality based on federal law. Therefore, Plaintiffs' state law claims are preempted by federal law and the latter provide appropriate relief for those violations being alleged.

## **CONCLUSION**

WHEREFORE, Defendants ABM Aviation, Inc., Jessica Mora, Prystal Milton, Antonio DeLeon, United Airlines, Inc., Simplicity Ground Services, LLC d/b/a Simplicity USA, and

ExpressJet Airlines, Inc. respectfully requests that Plaintiffs; Motion to Remand be denied and that this action proceed in this Court.

Respectfully submitted,

ROSE LAW GROUP PLLC

*/s/ Marc Michael Rose*
Marc Michael Rose
State Bar No. 24098350
777 Main Street, Suite 600
Ft. Worth, Texas 77024
Telephone: (817) 887-8118
Facsimile: (817) 887-8001
E-mail: marc@roselg.com
**COUNSEL FOR DEFENDANTS ABM AVIATION, INC., JESSICA MORA, PRYSTAL MILTON, AND ANTONIO DELEON**

And

Patrick J. Comerford
RIGBY SLACK LAWRENCE BERGER AKINC PEPPER & COMERFORD
3500 Jefferson Street, Ste. 330
Austin, Texas 78731
Telephone: (512) 782-2054
E-mail: pcomerford@rigbyslck.com
**COUNSEL FOR DEFENDANT EXPRESSJET AIRLINES, INC.**

And

Jad J. Stepp
STEPP & SULLIVAN, P.C.
5300 Memorial Drive, Suite 620
Houston, Texas 77007
Telephone: (713) 336-7203
Facsimile: (713) 336-7250
E-mail: jstepp@ss-pc.com
**COUNSEL FOR DEFENDANTS UNITED AIRLINES, INC. AND SIMPLICITY GROUND SERVICES, LLC d/b/a SIMPLICITY USA**

# CERTIFICATE OF SERVICE

This is to certify that on June 4, 2021, a true and correct copy of the foregoing document was served by electronic service on:

Tobias A. Cole
Mary E. Allen
THE COLE LAW FIRM
1616 S. Voss Road, Suite 450
Houston, Texas 77057
Telephone: (832) 539-4900
Facsimile: (832) 539-4899
E-mail: toby@colelawtx.com
E-mail: mary@colelawtx.com
**COUNSEL FOR PLAINTIFFS**

Robert E. Ammons
THE AMMON LAW FIRM, L.L.P.
3700 Montrose Boulevard
Houston, Texas 77006
Telephone: (713) 523-1606
Facsimile: (713) 523-4159
E-mail: rob@ammonslaw.com
E-mail: terri@ammonslaw.com
**COUNSEL FOR PLAINTIFFS**

*/s/ Marc Michael Rose*
Marc Michael Rose