IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KIMBERLY F. MILLS, Individually and As Independent Executrix of the Estate of ARTHUR MARK MILLS, and on behalf of the Beneficiaries to the Estate to include JEREMY M. MILLS, LEVI C. MILLS AND APRIL C. WEBB, Each Individually and as WRONGFUL DEATH BENEFICIARIES OF ARTHUR MARK MILLS, DECEASED, <br> *Plaintiffs*, <br><br> v. <br><br> UNITED AIRLINES, INC., ABM AVIATION, INC., SIMPLICITY GROUND SERVICES, LLC D/B/A SIMPLICITY USA, ANTONIO DELEON, JESSICA MORA, PRYSTAL MILTON, and EXPRESSJET AIRLINES, INC., <br> *Defendants*. | § § § § § § § § § § § § § § § § § § § § § | Civil Action No. H-21-1241 |

**DEFENDANTS' OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDATIONS ON PLAINTIFFS' MOTION TO REMAND**

Defendants ExpressJet Airlines, Inc., United Airlines, Inc., ABM Aviation, Inc., and Simplicity Ground Services, LLC, by and through their undersigned counsel, respectfully object as follows to the Proposed Findings and Recommendations of Hon. Frances H. Stacy on Plaintiffs' Motion to Remand pursuant to Federal Rule of Civil Procedure 72(a) and 28 U.S.C. 636(b)(1)(C).

**INTRODUCTION**

Plaintiffs seek damages, including exemplary damages, from two airlines, two ground handling companies, and their agents, for injuries allegedly sustained by decedent Arthur Mark Mills. Plaintiffs' recent discovery responses clarify that their allegations arose from the airlines'

1

enforcement of security measures, the sizes and configurations of certain seats on the aircraft, the airlines' seating assignment policies, and the type of equipment used to deplane passengers from the subject flight. As such, the claims are expressly preempted by the Airline Deregulation Act ("ADA"), as interpreted by the Supreme Court in *Northwest, Inc. v. Ginsberg* and the Fifth Circuit in *Hodges v. Delta Airlines* and *O'Carroll v. American Airlines*. *See Ginsberg*, 572 U.S. 273 (2014) (the Airline Deregulation Act pre-empts state law claims when such claims seek to enlarge the contractual obligations that the parties voluntarily adopted); *Hodges*, 44 F.3d 334, 336 (5th Cir. 1995); and *O'Carroll*, 863 F.2d 11 (5th Cir. 1989), *cert. denied*, 49 U.S. 1106 (1989).

Finally, removal is timely because while Plaintiffs' pleadings and early discovery responses indicated that their claims arose from personal injuries allegedly sustained during boarding and deplaning, ADA preemption analysis in the tort context requires a more detailed analysis. Plaintiffs' recent discovery responses[1] make clear that their claims are based on numerous aspects of the carrier's services which are expressly pre-empted by the ADA.

## ARGUMENT

I.   **Plaintiffs' Recent Discovery Responses and Requests Make Clear That Plaintiffs' State Law Claims Arise from the Defendant Airlines' Enforcement of Security Protocols, Seating Practices, and De-Planing Equipment Used, and Are Thus "Related To" A "Service" of the Defendant Air Carriers.**

The routes and services of an air carrier are at issue in this lawsuit. Plaintiffs seek damages under Texas negligence law based on alleged air carrier conduct that was undertaken in compliance with federal regulations, which Plaintiffs nonetheless find objectionable. Plaintiffs' state law negligence claims allege negligence arising from the defendant airlines' enforcement of security measures, the alleged sizes and layout of certain seats of the aircraft that operated the subject flight,

---

[1] The Court is empowered to receive said further evidence, and to review the issue *de novo*, pursuant to 28 U.S.C. 636(b)(1)(C).

2

the type of equipment that was used to board and deplane passengers, and Defendants' alleged non-compliance with federal regulations governing nondiscrimination of disabled passengers in air travel:

- "Wade Webb (my husband) and Jeremy Mills (my brother) were at security. If [the air carrier] would allow them on the plane, Wade and Jeremy could safely lift dad… Unfortunately, that never happened..." *See* Plaintiff April Webb's First Interrogatory Answers to ExpressJet, attached hereto as **Exhibit A**, at p. 8, ¶ 1. (Wade Webb and Jeremy Mills were not ticketed passengers for the subject flight. Federal regulations, therefore, forbade them from boarding the subject flight.)

- "We were originally booked for Row 3 ACD but this was changed to Row 4 ACD. It was not clear why United reassigned dad to Seat 4A when seat 3C (dad's original seat) had more leg room … Dad is 6'4" and 230 pounds. The agents were able to get dad halfway into Seat 4A but dad's legs would not fit due to the limited leg room … it appeared the agents were going to break his legs." *Id.* at p. 7, ¶ 3.

- "The jet bridge did not connect directly and fully to the plane. A narrow metal catwalk was used to allow passengers to deboard the plane." *Id*. at p. 8, ¶ 3. (Plaintiffs allege that the use of this equipment caused numerous issues during the deplaning of Mr. Mills which contributed to his injuries.)

- "Produce all documents that showed Defendant ABM Aviation, Inc. did comply with the Air Carrier Access Act (14 CFR Part 382) at Houston George Bush Intercontinental Airport on the Flight." *See, e.g.*, Plaintiffs' Second Request for Production to ABM, attached hereto as **Exhibit B**, at p. 7 Request No. 11. (Plaintiffs made the same request to all moving Defendants.)

- "Produce all documents that showed Defendant ABM Aviation, Inc. did not comply with the Air Carrier Access Act (14 CFR Part 382) at Houston George Bush Intercontinental Airport on the Fight." *See id.* at p. 7, Request No. 12. (Plaintiffs made the same request of all moving Defendants).

The claims asserted by Plaintiffs, as clarified by the foregoing discovery responses and requests, arise from the defendant airlines' enforcement of security protocols by not allowing unticketed individuals from boarding the aircraft, seating practices, and the type of deboarding equipment used, all of which are "related to" a "service" of the defendant air carriers. Moreover, Plaintiffs' request that the Defendants produce records that show compliance with federal regulations

3

demonstrate their understanding that federal law is the standard of care for servicing passengers with disabilities to board and deplane an aircraft.

**II.      The ADA Preempts Plaintiffs' State Law Tort Claims Related to Airline Services.**

The ADA's preemption clause provides that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation." 49 U.S.C. 41713(b)(1). The first step in ADA preemption analysis is to determine whether the claim involves a "price, route, or service" of an air carrier. The second step is to determine whether the specific allegations underlying the claim are sufficiently "related to" the price, route or service to warrant preemption. *See Conservation Force v. Delta Air Lines*, 190 F.Supp.3d 606, 612 (N.D. Tex. 2016); *see also Travel All Over the World v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1432 (7th Cir. 1996).

A "service" of an air carrier encompasses any "bargained-for or anticipated provision of labor from one party to another … such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself." *Travel All Over the World*, 73 F.3d at 1432. This has been broadly applied, including to cases arising from accidental disclosure of personal information originally gathered during ticketing, *see In Re American Airlines Privacy Litigation*, 370 F.Supp.2d 552, 564 (N.D. Tex. 2005) (preemption applied because the allegations were related to ticketing), and to actions arising from challenges to pricing terms by third parties. *See Lynn-Lea Travel v. American Airlines*, 283 F.3d 282, 287 (5th Cir. 2002) (action challenging a carrier's reduction of commissions to travel agencies was preempted because the allegations were related to price).

The Supreme Court has held that the ordinary meaning of the phrase "related to" applies here: "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into

4

association with or connection with." *Morales v. Trans World Airlines*, 504 U.S. 374, 383 (1992). Thus, claims based on allegedly tortious actions taken during the provision or attempted provision of "services" are generally preempted. *See, e.g., Rombom v. United Air Lines*, 867 F.Supp. 214, 216 (S.D.N.Y. Nov. 7, 1999) (The ADA preempted a claim by a passenger who interrupted the delivery of safety instructions by flight attendants and was removed from the aircraft; his removal was necessary for the service being provided – the delivery of safety instructions.)

Claims that are outside of the preemptive scope of the ADA include those in which the conduct alleged is only tenuously related to air travel, or was not done in furtherance of air travel. *See, e.g., Chouest v. American Airlines*, 839 F.Supp. 412, 415–16 (E.D. La. 1993) (tour bus provided by airline as part of a vacation package was not an airline "service" as contemplated by the ADA, and therefore claims arising from the tour bus trip were not preempted); *accord Morales*, 504 U.S. at 390 ("We do not … set out on a road that leads to pre-emption of state laws against gambling and prostitution as applied to airlines. Nor need we address whether state regulation of the nonprice aspects of fare advertising[, such as] state [obscenity] laws, would similarly 'relate to' rates; the connection would obviously be far more tenuous.")

Plaintiffs' state law tort claims in this action are preempted by the ADA because they strike at core aspects of the bargained-for exchange between air carrier and passenger. First, Plaintiffs' allegation that the defendant airlines were negligent in denying non-ticketed family members access to the aircraft is similar to claims found to be preempted in *O'Carroll v. American Airlines, Inc.*, 863 F.2d 11 (5th Cir. 1989), *cert. denied*, 490 U.S. 1106 (1989). Plaintiff in *O'Carroll* alleged he was wrongfully removed from a flight after he became drunk and boisterous. *O'Carroll*, 863 F.2d at 12. The court held that the enforcement of O'Carroll's state law claims would have resulted in significant *de facto* regulation of the airlines' boarding practices by interfering with airlines'

5

substantial discretion to deny boarding under 49 U.S.C. App. § 1511(a). Similarly, here, Plaintiffs seek to recover damages under state law based on the carriers' decision to deny non-ticketed individuals entry onto the aircraft, even though the carriers' obligations with respect to passengers who wish to travel with a personal safety assistant are clearly defined by federal regulations. *See* 14 C.F.R. § 382.29 (c)(3) ("If a passenger voluntarily chooses to travel with a personal care attendant or safety assistant that you do not require, you may charge for the transportation of that person.")

Second, Plaintiffs' state law claims based on the size and configuration of seats, and maneuverable space aboard the aircraft, as well as the airlines' policies regarding seat assignments, are also preempted by the ADA. The Fifth Circuit held in *Witty v. Delta Air Lines, Inc.* that a tort claim based on space constraints within an aircraft was preempted under the ADA because the enforcement of standards regarding space constraints necessarily impacts price in the context of air travel. 366 F.3d 380, 383 (5th Cir. 2004) (The passenger's claim that he developed deep vein thrombosis because of insufficient leg room was preempted by the ADA because "such a requirement would inexorably relate to prices charged by airlines .... Since requiring more leg room would necessarily reduce the number of seats on the aircraft, such a requirement would impose a standard 'relating to a price' [under the ADA.]") The equipment used to deplane passengers and the availability of certain seating to passengers with mobility impairments are both aspects of the airline's services which are impacted by the size of the aircraft used to operate a given flight. This reality is reflected in the relevant federal regulations. *See* 14 CFR § 382.65(c)(2) ("[Carriers] must ensure that on-board wheelchairs … [are] designed to be compatible with the maneuvering space, aisle width, and seat height of the aircraft …"); 14 CFR § 382.61 ("[Carriers] must ensure that aircraft with 30 or more passenger seats on which passenger aisle seats have

6

Case 4:21-cv-01241   Document 27   Filed on 01/27/22 in TXSD   Page 7 of 12

armrests are equipped with movable aisle armrests on at least one-half of the aisle seats in rows in which passengers with mobility impairments are permitted to sit under FAA … safety rules."). Accordingly, each of Plaintiffs' claims regarding space and seating constraints aboard the aircraft threatens to impose a new standard relating to prices and/or services under the ADA, and is therefore preempted.

The Memorandum and Recommendation notes that "[t]here is no statutory civil 'cause of action' provided for in either the ADA or the ACAA, and an aggrieved passenger is left with filing a complaint with the Department of Transportation." Dkt. No. 35 a p. 5. That observation is beside the point for purposes of preemption analysis because complete preemption requires a jurisdictional grant to the federal courts for enforcement of the right. *Gulf Winds Int'l Inc. v. Almanzar*, Case No. 4:20-CV-04126, 2021 WL 4481340, at *3 (S.D. Tex. Sept. 29, 2021). As is relevant here, 49 U.S.C. § 46106 authorizes the DOT to enforce orders arising from an investigation of an ACAA violation by filing its own civil action in district court or by requesting that the Department of Justice do so. *See* 49 U.S.C. § 46107(b)(1)(A); *see also Stokes v. Southwest Airlines,* 887 F.3d 199, 203 (5th Cir. 2018). This is in addition to the DOT's ability to issue an order compelling compliance with ACAA, revoke an airline's air carrier certificate, 49 U.S.C. § 46101(a)(4), or impose civil penalties of up to $25,000 for each act of discrimination. *See* 49 U.S.C. § 41705(b), 49 U.S.C. §46301(a)(1)(A) & (c)(1)(A).

Finally, the Memorandum and Recommendation erroneously relies on *Gill v. JetBlue Airways Corp.*, 836 F.Supp.2d 33 (D. Mass. 2022) ("*Gill*") for the proposition that even if Plaintiffs' state law tort claims "relate to services provided by the airline, such services are not inherently airline services such that any state law negligence claims related thereto would be completely preempted by the ADA and/or the ACAA." *See* Dkt. Entry No. 25 at p. 5. To the

7

contrary, *Gill* demonstrates that a finding of preemption is required here. First, the allegations of general negligence which were addressed by the portion of *Gill* quoted by the Memorandum and Recommendation are distinguishable from the allegations raised by Plaintiffs' state law claims. The basis for plaintiff's general negligence claim in *Gill* was the claim that airline employees neglected to put an armrest in the upright position, which caused plaintiff to fall out of the aisle chair during boarding. *Gill*, 836 F.Supp. 2d at 37. Unlike here, the plaintiff in *Gill* did not further encroach the ADA by alleging that the carrier had a duty to prevent the alleged negligence by providing exceptions to standard security measures or implementing disability accommodations that are beyond those set forth in the relevant federal regulations. The question was merely whether the carrier's agents fulfilled obligations in a non-negligent manner. *Id.* at 43. Thus, the enforcement of the *Gill* plaintiff's claims under state law did not threaten to "re-regulate what Congress had decided to de-regulate." *Id.* at 43 (*quoting Taj Mahal Travel v. Delta Air Lines*, 164 F.3d 186, 191 (3d Cir. 1998)).

However, the *Gill* Court did not just address the general negligence claims asserted therein. *Gill* also addressed the allegations of negligent training, and held that the *Gill* plaintiff's negligent training allegations were preempted because federal regulations "specifically require … carriers to train personnel 'to proficiency' in boarding and deplaning procedures and … in the proper and safe operation of all equipment used to accommodate disabilities [and] describe the training required with sufficient detail to supplant the common-law negligence standard in this area." *Gill*, 836 F. Supp. 2d at 46. A similar analysis applies here. The gravamen of Plaintiffs' state law negligence claims is that the defendants should have taken different actions in enforcing security, assigning seats, seat configuration, and deplaning disabled passengers. Those areas are regulated

in detail by applicable federal regulations. *See, e.g.*, 14 C.F.R. § 382; 49 U.S.C. App. § 1511(a). Thus, the rationale of *Gill* supports retaining federal jurisdiction here based on preemption.

**III.     Federal Question Jurisdiction Exists Here Under *Grable*.**

The Supreme Court clarified in *Grable* that the absence of a federal cause of action is but one factor in determining whether federal question jurisdiction exists. *Grable & Sons Metal Products v. Darue Engineering and Manufacturing,* 545 U.S. 308, 314 (2005). The *Grable* Court held that federal question jurisdiction existed over a state law quiet title action in which the only actually disputed and substantial issue was the validity of a federal notice provision. *Id.* In addition, the Court anticipated that its exercise of federal jurisdiction over the action would not lead to an onslaught of similar filings in federal court. The issues presented by this case should likewise be decided in a federal forum. As described above, this is not a run-of-the-mill personal injury case; Plaintiffs' claims turn on the interplay between several federal regulatory schemes and questions about the congressionally-intended balance between them is appropriately reconciled in federal court.

## CONCLUSION

For the foregoing reasons, Defendants ExpressJet Airlines, Inc., United Airlines, Inc., ABM Aviation, Inc., and Simplicity Ground Services, LLC, respectfully request that this Court deny Plaintiffs' Motion to Remand, and for such other and further relief as the Court may deem just and proper.

Dated: January 27, 2022
   Fort Worth, Texas

                Respectfully submitted,

                CONDON & FORSYTH, LLP

                */s/ Andrew Johnson*
                Admitted *Pro Hac Vice*

1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067
Telephone: (310) 557-2030
Facsimile: (310) 557-1299
Email: ajohnson@condonlaw.com
*Counsel for Defendants*
*UNITED AIRLINES, INC. and SIMPLICITY GROUND SERVICES, LLC*

ROSE LAW GROUP PLLC

*/s/ Marc Michael Rose*
Marc Michael Rose
State Bar No. 24098350
777 Main Street, Suite 600
Ft. Worth, Texas 77024
Telephone: (817) 887-8118
Facsimile: (817) 887-8001
E-mail: marc@roselg.com
*Counsel for Defendants*
*ABM AVIATION, INC., JESSICA MORA, PRYSTAL MILTON, and ANTONIO DELEON*

*/s/ Jad J. Stepp*
STEPP & SULLIVAN, P.C.
5300 Memorial Drive, Suite 620
Houston, Texas 77007
Telephone: (713) 336-7203
Facsimile: (713) 336-7250
E-mail: jstepp@ss-pc.com
*Counsel for Defendants*
*UNITED AIRLINES, INC. AND SIMPLICITY GROUND SERVICES, LLC*

*/s/ Patrick J. Comerford*
RIGBY SLACK LAWRENCE BERGER AKINC PEPPER & COMERFORD
3500 Jefferson Street, Ste. 330
Austin, Texas 78731
Telephone: (512) 782-2054
E-mail: pcomerford@rigbyslck.com
*Counsel for Defendant*
*EXPRESSJET AIRLINES, INC.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this, the 27th day of January 2022, I caused a true and correct copy of the foregoing DEFENDANTS' OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDATIONS ON PLAINTIFFS' MOTION TO REMAND to be served by electronic means upon all parties and counsel of record herein at the addresses designated below.

| | |
|---|---|
| Robert E. Ammons, Esq.<br>Justin D. Burrow, Esq.<br>Kacy J. Shindler, Esq.<br>The Ammons Law Firm, LLP<br>3700 Montrose Blvd<br>Houston, TX 77006<br>Telephone: (713) 523-1606<br>Facsimile: (713) 523-4159<br>E-mail: rob@ammonslaw.com<br>E-mail: justin.burrow@ammonslaw.com<br>E-mail: kacy@ammonslaw.com | *Counsel for Plaintiffs* |
| Jad J. Stepp, Esq.<br>Stepp & Sullivan PC<br>5300 Memorial Drive, Ste 620<br>Houston, TX 77007<br>Telephone: (713) 336-7200<br>Fax: (713) 336-7250<br>Email: jstepp@ss-pc.com | *Co-Counsel for Defendant United Airlines, Inc. and Simplicity Ground Services, LLC* |
| Marc M. Rose, Esq.<br>Rose Law Group PLLC<br>777 Main St, Ste 600<br>Fort Worth, TX 76102<br>Telephone: (817) 887-8118<br>Email: marc@roselg.com | *Counsel for Defendants ABM Aviation, Inc., Antonio DeLeon, Jessica Mora, and Prystal Milton* |

Patrick J. Comerford, Esq.  *Counsel for ExpressJet Airlines,*
Rigby Salck Lawrence Berger Comerford  *Inc.*
3500 Jefferson Street, Suite 330
Austin, TX 78731
Telephone: (512) 782-2064
Email: pcomerford@rigbyslack.com

          */s/ Max Lavinthal*_____
          Max Lavinthal