IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **KIMBERLY F. MILLS, Individually and as Independent Executrix of the Estate of ARTHUR MARK MILLS, and on behalf Of the Beneficiaries to the Estate to include JEREMY M. MILLS, LEVI C. MILLS and APRIL C. WEBB, Each Individually and as Wrongful Death Beneficiaries of ARTHUR MARK MILLS, DECEASED** | § § § § § § § § § | |
| *Plaintiffs* | § § | **CASE NO. 4:21-cv-1241** |
| v. | § § | |
| **UNITED AIRLINES, INC., ABM AVIATION, INC., SIMPLICITY GROUND SERVICES, LLC D/B/A SIMPLICITY USA, ANTONIO DELEON, JESSICA MORA, PRYSTAL MILTON, and EXPRESSJET AIRLINES, INC.** | § § § § § § § § § | |
| *Defendants* | § | |

**PLAINTIFF APRIL WEBB'S ANSWERS TO
DEFENDANT EXPRESSJET AIRLINES, INC.'S
FIRST SET OF INTERROGATORIES**

TO: Defendant ExpressJet Airlines, Inc., by and through their counsel of record, Patrick J. Comerford, RIGBY SLACK LAWRENCE BERGER AKINC PEPPER & COMERFORD, PLLC, 3500 Jefferson Street, Suite 330, Austin, Texas 78731.

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff April Webb, individually as heir at law of Arthur Mills, Deceased, serves her Answers to Defendant ExpressJet Airlines, Inc.'s First Set of Interrogatories.

[*signature block on next page*]

Respectfully submitted,

**THE AMMONS LAW FIRM, LLP**

*/s/ Justin D. Burrow*
Robert E. Ammons
Texas Bar No. 01159820
Justin D. Burrow
Texas Bar No. 24035598
3700 Montrose Boulevard
Houston, Texas 77006
Telephone:     (713) 523-1606
Facsimile:      (713) 523-4159
E-mail:          rob@ammonslaw.com
E-mail:          justin.burrow@ammonslaw.com
E-mail:          melisa.navarro@ammonslaw.com

and

Tobias A. Cole
Texas Bar No. 24007021
Mary E. Allen
Texas Bar No. 24116021
1616 South Voss Road, Suite 450
Houston, Texas 77057
Telephone:     (832) 539-4900
Facsimile:      (832) 539-4899
E-mail:          service@colelawtx.com

**ATTORNEYS FOR PLAINTIFFS**

- 3 -

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the above and foregoing was forwarded on this 8th day of November 2021 as follows:

| | |
|---|---|
| Marc Michael Rose | *Via email: marc@roselg.com* |

Rose Law Group, PLLC
777 Main Street, Suite 600
Fort Worth, Texas 77024
***Counsel for Defendants ABM Aviation, Inc.,***
***Jessica Mora, Prystal Milton, and Antonio DeLeon***

| | |
|---|---|
| Jad J. Stepp | *Via email: jstepp@ss-pc.com* |

Stepp & Sullivan, P.C.
5300 Memorial Drive, Suite 620
Houston, Texas 77007
***Counsel for Defendants United Airlines, Inc. and***
***Simplicity Ground Services, LLC d/b/a Simplicity USA***

| | |
|---|---|
| Patrick J. Comerford | *Via email: pcomerford@rigbyslack.com* |

Rigby Slack Lawrence Berger Akinc Pepper & Comerford, PLLC
3500 Jefferson Street, Suite 330
Austin, Texas 78731
***Counsel for Defendant Expressjet Airlines, Inc.***

                                                                      */s/ Justin D. Burrow*
                                                                       Justin D. Burrow

**PLAINTIFF APRIL C. WEBB'S ANSWERS TO**
**DEFENDANT EXPRESSJET AIRLINES, INC.'S**
**FIRST SET OF INTERROGATORIES**

**INTERROGATORY NO. 1:** Identify any and all felonies or crimes of which you have been convicted within the last ten (10) years. Please include the nature of each offense and the state and county in which the conviction occurred.

**RESPONSE: Plaintiff objects because this interrogatory seeks information that is not relevant to the subject matter of the litigation nor is it reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to this interrogatory because it is overly broad. Defendant's request is not limited as to time, scope or subject matter that is relevant to the current litigation.**

**Subject to the foregoing objection and without waiving the objection, none.**

**INTERROGATORY NO. 2:** Identify every lien, notice of subrogation, claim for reimbursement, and any other encumbrance to any judgment or settlement reached in this case. In your answer, please indicate whether Medicare, Medicaid, any governmental agency or insurer, employer, or other insurer has paid any portion of any of the claimed expenses.

**RESPONSE: Plaintiff objects to this Request to the extent that it seeks materials protected by the consulting expert privileges. Plaintiff will produce expert materials in accordance with the Federal Rules of Civil Procedure and any order from this Court.**

**Subject to and without waiving the foregoing objections, despite not having expert analysis completed at this time and in a good faith effort to be forthcoming with information at this early stage in the litigation, Plaintiff provides the following information that is responsive to this request. However, Plaintiff reserves the right to amend this information after experts have had an opportunity to complete their analysis.**

**While premature at this time, Plaintiff incorporates by reference Plaintiff's disclosure responses, designation of experts, and expert materials that will be disclosed, including all supplements and amendments, and expert deposition testimony Plaintiff refers Defendant to all expert deposition testimony that will be taken in this matter and incorporate such testimony here.**

**Please see the following document being produced herewith:**

| Description | Record Type | Bates Beginning | Bates Ending |
|---|---|---|---|
| **Covenant Health System [B]** | **Billing** | **P000001** | **P000074** |
| **Covenant Physical Medicine & Rehab [B]** | **Billing** | **P000075** | **P000097** |
| **Covenant Physical Medicine & Rehab [M]** | **Medical** | **P000098** | **P000117** |
| **TrustPoint Rehabilitation [M]** | **Medical** | **P000118** | **P001770** |

| Description | Record Type | Bates Beginning | Bates Ending |
|---|---|---|---|
| **Trustpoint Rehabilitation Hospital of Lubbock [B]** | Billing | P001771 | P001815 |
| **University Medical Center EMS [B]** | Billing | P001816 | P001820 |
| **2019.02.06 TIRR release for air travel** | TIRR – Infml | P001821 | P001821 |
| **2019.02.07 TIRR Discharge documents** | TIRR – Infml | P001822 | P001834 |
| **2019.02.07 TIRR Transfer of Care documents** | TIRR – Infml | P001835 | P001851 |
| **Autopsy report - preliminary** | Autopsy | P001852 | P001853 |
| **Autopsy report** | Autopsy | P001854 | P001858 |
| **Lubbock Fire Marshal's [Acc]**<br>• CAD Notes [Acc] [Infml]<br>• Dispatch Rpt [Acc] [infml]<br>• Dispatch Call Audio [Acc] | FOIA | P001859 | P001867 |
| **Covenant Medical Center [M]** | Medical | P001868 | P004740 |
| **Calvert Home Health, Ltd. [M]** | Medical | P004741 | P004938 |
| **Covenant Medical Center [M]** | Medical | P004991 | P007519 |
| **Dickens County EMS [B]** | Billing | P007520 | P007522 |
| **Dickens County EMS [M]** | Medical | P007523 | P007528 |
| **Lubbock Aid Ambulance [B]** | Billing | P007529 | P007532 |
| **Lubbock Aid Ambulance [M]** | Medical | P007533 | P007553 |
| **Sound Physicians [B]** | Billing | P007554 | P007556 |

**INTERROGATORY NO. 3:** Identify each person who provided training to any plaintiff regarding how to assist the Decedent in connection with air or other travel, including but not limited to the Flight; identify which plaintiffs were trained, the date, location, and duration of the training; and all materials provided in connection with the same.

**RESPONSE: TIRR Memorial's medical providers and staff.**

**INTERROGATORY NO. 4:** Identify the person who booked the decedent's ticket for the Flight, the date the booking was made, the method by which the booking was made, and, if the booking was made by telephone, set forth the telephone number from which the individual who made said booking placed the call.

**RESPONSE: I booked my dad's ticket for the United flight online.**

**INTERROGATORY NO. 5:** Identify all communications, requests, or inquiries made by plaintiffs or anyone acting on their behalf in connection with an actual or potential autopsy or death investigation of the Decedent.

**RESPONSE: Plaintiff objects on the grounds that this discovery request violates the Attorney Client Privilege, as well as the Attorney Work Product Doctrine.**

**INTERROGATORY NO. 6:** Identify all individuals or entities who performed an autopsy of the Decedent, state the date each was performed, and identify all persons currently in possession of the results of the same.

**RESPONSE:**

**Lone Star Autopsy LLC**
**Tracy J. Dyer M.D., J.D.**
**Medical providers, agents, and custodian of records**
**P.O. Box 140647**
**Dallas, Texas 75214-0647**

**Autopsy Associates of North Texas**
**P.O. Box 724**
**Denton, Texas 76202**
**(940) 390-3834**

**INTERROGATORY NO. 7:** Identify all communications to any Defendant or any representative thereof regarding accommodations for Decedent's disability and/or condition prior to the date of the Flight.

**RESPONSE: My mom, Kim Mills, and I spoke with numerous agents with United Airlines before dad was discharged from TIRR confirming dad was good to fly. Mom and I gave United information about the motorized wheelchair (brand, battery info, weight of chair, weight and dimensions of dad) and the multiple medical bags would be transported. Mom and I also informed United that dad was a quadraplegic and provided a letter from TIRR that dad was cleared for air travel. United informed us that dad was cleared to fly on United who would provide trained personnel to transport dad into and out of his seat. United told us to ask for a United supervisor when we arrived at the airport. The United supervisor would get us checked in, take us through TSA to our gate and assist with boarding the plane. United further told mom and me that the United supervisor would be with us every step of the way to make sure we had no problems.**

**INTERROGATORY NO. 8:** Identify all communications to any Defendant or any representative thereof regarding accommodations for Decedent's disability and/or condition on the date of the Flight.

**RESPONSE: When mom, dad and I arrived at the IAH, I asked for a United supervisor. An United agent (African-American female, name unknown) met us and acted as though she was confused by our request. While the United agent checked the medical bag, she simply pointed us in the direction of TSA, where we were left to navigate the rest of the way to our plane.**

**Getting through security was a bit of a hassle but we made it through without the help of any United agents. Once through security, we went to our gate and asked another United agent (Caucasian female, name unknown) for assistance. The United agent looked at our boarding passes and asked us to wait a few minutes while she changed our seats purportedly for easier access and maneuverability. We were originally booked for Row 3 ACD but this was changed to Row 4 ACD. It was not clear why United reassigned dad to Seat 4A when Seat 3C (dad's original seat) had more leg room.**

**When pre-boarding began, an agent (male Hispanice, name and employer unknown) wheeled dad out on the tarmac and then up a ramp to access the plane. Another agent (male Hispanice, name and employer unknown) met us at the airplane. While mom stayed with dad, I was asked to go down to the tarmac and show the loaders how to operate the motorized wheelchair.**

**Once on the plane, two Hispanic male agents (names and employer unknown) assisted with transferring dad from his wheelchair to an aisle wheelchair. While transferring dad from the aisle wheelchair to Seat 4A, the agents were having difficulties. Dad is 6'4" and 230 pounds. The agents were able to get dad halfway into Seat 4A but dad's legs would not fit due to the limited leg room. The agents tried forcing his legs behind Seat 3A in front of dad by pushing on them continuously. Mom and I told the agents to stop because it appeared the agents were going to break his legs. After several minutes of the agents not knowing what else to do, dad, momand me were reassigned Row 2A (Mark), 3C (April), and 3A (me).**

**A male United supervisor (Victor) came on board and asked about the holdup and the problems with boarding. I told Victor that the agents were having a hard time getting dad into his seat. Victor then exited the plane. While trying to get dad into seat 2A, the agents dropped dad onto the floor. To get him up, the agents leaned on dad pushing his back forward. Dad's shoulder got hung in a backhand position on one of the aisle seats. Meanwhile, Victor came back on board and advised us we had 5 minutes to get dad into a seat. If this could not be done, Victor advised us that we will needed to travel on another plane. Victor then exited the plane without checking on dad's wellbeing after being dropped.**

**During the flight, dad did not appear he was feeling good. His head was leaned up against the window. Mom and I noticed the agents got the seat belt extender out but had failed to actually buckle him in completely. To help support his upper body, mom sat directly behind him and wrapped her arms around dad.**

**After landing at the Lubbock Airport, everyone deboarded the plane, except for us. The United captain (name unknown) had come out of the cockpit and stood while everyone deboarded. A female supervisor, (Kian, employer unknown) came on board to let us know the Houston airport had called ahead regarding a transfer. Kian brought one agent (Hispanic male, name and employer unknown) to deboard dad. Due to dad's size, this obviously was not going to work, so we waited until another agent (African American male, last name Washington, employer unknown) arrived to help.**

**The agents were having problems transporting dad. I told Kian that Wade Webb (my husband) and Jermey Mills (my brother) were at security. If United would allow them on the plane, Wade and Jermey could safely lift dad. Kian told me that would not a problem. Unfortunately, that never happened, as security denied Wade and Jermey access into the airport.**

**Washington and the Hsipanic agent transferred dad into a aisle wheelchair to deboard the plane. As the agents were transferring Mark into an aisle wheelchair, April and I told the agents to belt dad because he had no body control. The Hispanic agent began pushing dad's aisle wheelchair to exit the plane. During this process, dad's arm/elbow hit the arm rest of the other seat. Next, dad's elbow was pinned against the corner of the wall while the agents tried to pick up the aisle wheelchair to straighten it out.**

**The jet bridge did not connect directly and fully to the plane. A narrow metal catwalk was used to allow passengers to deboard the plane.**

**While exiting the plane, the Hispanic agent pushed dad's aisle wheelchair forward, not backward, onto the catwalk and hit the lip of the catwalk. When this happened, mom and I saw dad fall face forward onto the catwalk because dad was not properly belted and secured in the aisle wheelchair. No agent was walking in front of the aisle wheelchair. After watching dad flip onto the catwalk, I screamed "they dropped him." In response, Kian denied that in fact happened and said dad was fine, which he clearly was not.**

**Next, I observed Washington and the Hispanic agent tried to place dad back in the aisle wheelchair. This was not successful. Washington then wrapped his arms underneath dad's shoulders (chest to chest like a bearhug) and dragged dad across the catwalk into the jetbridge. Dad's face scrapped the handrails during this process. At the end of the catwalk, dad's foot got stuck and hung up in a gap between the catwalk and the jetbridge. Washington yanked on dad to get his foot unstuck, lost his balance, and fell on top of dad's back, forcing dad's face to the floor of the jet bridge.**

**The agents then lifted dad into his wheelchair that was loaned by Numotion in Houston. It was then discovered the joystick on dad's electric wheelchair was broken, locking it down and making it unless. Kian, April, and a few other agents were forced to push and pull Mark's electric wheelchair through the airport.**

**At the baggage claim area, mom, dad, and I found Wade and Jeremy waiting with the representatives of Open Road Mobility Lubbock who were supposed to transport dad home safely. However, dad was complaining of neck and shoulder pain. Dad's ankles and knee were swollen and red, and dad's C-Collar was broken. Dad's elbow, toes, and face were bleeding, and his eyes were bloodshot. Dad's clothes were torn, and his underwear was shredded.**

**April mentioned calling EMS and the airport agents said they would handle the call. EMS arrived but the paramedics did not feel comfortable transporting dad so the fire**

department was also called. EMS and the fire department then transferred dad to the ambulance where he was taken to Convent Medical Center.

**INTERROGATORY NO. 9:** Identify all assistive devices Decedent or Plaintiffs used or obtained in connection with the care and/or mobility of Decedent outside of an inpatient setting from December 8, 2018 – June 6, 2019.

**RESPONSE: Plaintiffs object to this request because as phrased, the request is vague, ambiguous, overly broad, unduly burdensome and it demands a degree of exhaustiveness that would require a verbatim transcript of Plaintiffs' anticipated trial testimony. This information is better obtained through deposition.**

Subject to and without waiving the foregoing objections, dad used several different electric wheelchairs.

Please see the following document being produced herewith:

| Description | Record Type | Bates Beginning | Bates Ending |
|---|---|---|---|
| **Covenant Health System [B]** | **Billing** | **P000001** | **P000074** |
| **Covenant Physical Medicine & Rehab [B]** | **Billing** | **P000075** | **P000097** |
| **Covenant Physical Medicine & Rehab [M]** | **Medical** | **P000098** | **P000117** |
| **TrustPoint Rehabilitation [M]** | **Medical** | **P000118** | **P001770** |
| **Trustpoint Rehabilitation Hospital of Lubbock [B]** | **Billing** | **P001771** | **P001815** |
| **University Medical Center EMS [B]** | **Billing** | **P001816** | **P001820** |
| **2019.02.06 TIRR release for air travel** | **TIRR – Infml** | **P001821** | **P001821** |
| **2019.02.07 TIRR Discharge documents** | **TIRR – Infml** | **P001822** | **P001834** |
| **2019.02.07 TIRR Transfer of Care documents** | **TIRR – Infml** | **P001835** | **P001851** |
| **Autopsy report - preliminary** | **Autopsy** | **P001852** | **P001853** |
| **Autopsy report** | **Autopsy** | **P001854** | **P001858** |
| **Lubbock Fire Marshal's [Acc]**<br>• **CAD Notes [Acc] [Infml]**<br>• **Dispatch Rpt [Acc] [infml]**<br>• **Dispatch Call Audio [Acc]** | **FOIA** | **P001859** | **P001867** |
| **Covenant Medical Center [M]** | **Medical** | **P001868** | **P004740** |
| **Calvert Home Health, Ltd. [M]** | **Medical** | **P004741** | **P004938** |
| **Covenant Medical Center [B] INCOMPLETE** | **Billing** | **P004939** | **P004990** |
| **Covenant Medical Center [M]** | **Medical** | **P004991** | **P007519** |
| **Dickens County EMS [B]** | **Billing** | **P007520** | **P007522** |

| Description | Record Type | Bates Beginning | Bates Ending |
|---|---|---|---|
| **Dickens County EMS [M]** | Medical | P007523 | P007528 |
| **Lubbock Aid Ambulance [B]** | Billing | P007529 | P007532 |
| **Lubbock Aid Ambulance [M]** | Medical | P007533 | P007553 |
| **Sound Physicians [B]** | Billing | P007554 | P007556 |
| **TIRR Instruction - Wheelchair to Floor** | Manual | P007557 | P007561 |
| **TIRR Memorial Hermann [B]** | Billing | P007562 | P007617 |
| **TIRR Memorial Hermann [M]** | Medical | P007618 | P012447 |
| **1 United Airlines Ticket Receipts & Chair Dvc Tag** | Travel Docs | P012448 | P012449 |
| **United Airlines Documents** | Documents | P012518 | P012522 |
| **Recorded Call with United Rep** | Audio | P012533 | P012533 |
| **Open Road Mobility** | Record | P012534 | P012537 |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KIMBERLY F. MILLS, Individually and as Independent Executrix of the Estate of ARTHUR MARK MILLS, et al.,<br>*Plaintiffs,*<br><br>vs.<br><br>UNITED AIRLINES, INC., et al.,<br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§ CIVIL ACTION NO. 4:21-cv-1241<br>§<br>§<br>§<br>§ |

## VERIFICATION

THE STATE OF TEXAS §
§
COUNTY OF HOCKLEY §

Before me, on this day personally appeared **April Webb** known to me to be the person whose name is subscribed to the foregoing instrument and who, after being by me duly sworn, testified that he has personal knowledge of the facts contained in the foregoing Answers to Defendant ExpressJet Airlines Inc.'s **First Set of Interrogatories** and that said facts are true and correct.

_____
APRIL WEBB

SUBSCRIBED AND SWORN TO BEFORE ME, on this __8th__ day of November, 2021, to certify which witness my hand and seal of office.

[Notary Seal: RICKY GUZMAN, Notary Public, State of Texas, Comm. Expires 10-01-2022, Notary ID 131744086]

_____
NOTARY PUBLIC in and for
THE STATE OF TEXAS
My Commission expires: 10/1/2022